IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| BARRY J. BLUEFELD | * | |
| Plaintiff | * | |
| v. | * | Civil Action No. PX 15-2857 |
| BARRY S. COHEN, *et al.*, | * | |
| Defendants. | * | |

\*\*\*\*\*\*

**MEMORANDUM OPINION**

Pending before the Court is Defendants' Motion to Dismiss. ECF No. 100. The issues are fully briefed and the Court now rules pursuant to Local Rule 105.6 because no hearing is necessary. For the reasons stated below, the motion is granted.

**I.     BACKGROUND**

On September 22, 2015, Plaintiff Barry J. Bluefeld ("Bluefeld" or "Plaintiff"), filed this action on his own behalf and derivatively as a shareholder of Annuity Associates, Inc. ("Annuity") against Defendants Barry S. Cohen, Joel S. Meisel, and David H. Cohen (collectively "Defendants"). Plaintiff was granted leave to file an Amended Complaint, ECF No. 30, and did so on April 13, 2016. ECF No. 31.

According to Plaintiff, since Annuity's incorporation in 1984, Defendant Barry Cohen has served as a director and Secretary/Treasurer and Defendant Joel Meisel has served as a director and President. As of September 19, 2012, Barry Cohen and Joel Meisel owned 23.5% and 18.5% of Annuity's Class A voting shares, respectively. Defendant David Cohen is the property manager for the Benson Business Center, which a commercial real estate building and

1

Annuity's sole asset. ECF No. 31 at 3. David Cohen acquired a small Class A interest in July 2008.

Cumulatively, Plaintiff's Amended Complaint asserts claims of racketeering and conspiracy in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962–1964, and state law claims of fraudulent misrepresentation, conversion, unjust enrichment, breach of fiduciary duty, and fraud. ECF No. 31 at 10–48. First, Plaintiff contends that the Benson Business Center was intentionally left unoccupied which "artificially" reduced the value of the corporate assert and thus minority shareholders stake in the corporation. ECF No. 31 at 7. Plaintiff alleges that Defendants fraudulently hid the vacancy status of the Benson building when communicating to investors and on Annuity's profit and loss statements. ECF No. 31 at 8.

Additionally, Plaintiff alleges that Defendants defrauded Plaintiff and ten other Class B minority non-voting shareholders by diverting money "to pay personal expenses and expenses of other companies in which the Defendants control and own" without disclosing the transactions to minority shareholders. ECF No. 31 at 2. These alleged fraudulent transactions include the distribution monies to Defendants, the over-payment of management fees, payments to outside companies working on unrelated properties from the assets of Annuity, and the excessive payment of distributions to persons associated with Defendants. ECF No. 31 at 10.

On September 21, 2016, Plaintiff's third and final counsel withdrew his appearance. ECF No. 54. On October 4, 2016, Plaintiff then informed the Court that he would not be retaining new counsel and instead would proceed pro se. ECF No. 59 at 1. On November 23, 2016, Defendants filed a pre-motion letter seeking leave of the Court to file a motion to dismiss. ECF No. 82. On, December 16, 2016, the Court granted Plaintiff one month to obtain new counsel, after which

time Defendants could file their motion to dismiss. ECF No. 91. Plaintiff appealed this Court's order on January 11, 2017, which is currently pending before the United States Court of Appeals for the Fourth Circuit.[1]

Since the Court's December 16, 2016 order, no counsel for Plaintiff has entered an appearance. Thus, as permitted by the Court's Order, Defendants filed the instant motion on February 1, 2017. ECF No. 100.

## II. ANALYSIS

### A. Jurisdiction

As a threshold matter, the Court must determine whether it has jurisdiction to adjudicate Defendants' motion to dismiss in light of Plaintiff's most recent appeal of this Court's December 16, 2016 Order. "[W]hile the filing of a notice of appeal 'confers jurisdiction on the court of appeals and divests the district court of control over those aspects of the case involved in the appeal[,]'" the district court does not lose jurisdiction when the litigant takes an appeal from an unappealable order. *United States v. Jones*, 367 F. App'x 482, 484 (4th Cir. 2010) (quoting *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982) (citing *Ruby v. Sec'y of United States Navy*, 365 F.2d 385, 389 (9th Cir. 1966) (en banc))); *accord* Wright & Miller, 16A Fed. Prac. & Proc. Juris. § 3949.1 (4th ed.) ("The weight of authority holds that an appeal from a clearly non-appealable order fails to oust district court authority; older cases holding to the contrary have been rejected.") (footnotes omitted); *McKesson HBOC, Inc. v. Islamic Republic of Iran*, 315 F. Supp. 2d 63, 66 (D.D.C. 2004) ("[A] notice of appeal from an unappealable order does not divest the district court of jurisdiction."); *U.S. v. Brooks*, 145 F.3d 446, 456 (1st Cir.

---

[1] Plaintiff also appealed the Court's orders granting Defendants' motion to strike, *see* ECF No. 61, and denying Plaintiff leave to amend his complaint, *see* ECF No. 85, both of which have been dismissed by the Fourth Circuit Court of Appeals. *See* ECF No. 103 (dismissal as to ECF No. 61); ECF No. 104 (dismissal as to ECF No. 85)

1998) ("[A] district court can proceed, notwithstanding the filing of an appeal, if the notice of appeal is defective in some substantial and easily discernible way (if, for example, it is based on an unappealable order) or if it otherwise constitutes a transparently frivolous attempt to impede the progress of the case." ); *see also Hammon v. Barry*, 752 F. Supp. 1087, 1092 (D.D.C. 1990) ("Instead of allowing [a party] to willy-nilly deprive [a] Court of jurisdiction, thus bringing . . . proceedings to a standstill while a non-appealable ruling wends its way through the appellate process, the Court [may] disregard the notice of appeal from a non-appealable order and proceed with the case.") (internal citations and quotation marks omitted).

Here, Plaintiff appealed a non-final order for which no right to appeal has been triggered. Nor did Plaintiff obtain a certificate of appealability from this Court to pursue an appeal from an interlocutory or collateral order. *See United States v. Hinton*, 420 F. App'x 270, 270 (4th Cir. 2011) (dismissing appeal where denial of motion for recusal was "neither a final order nor an appealable interlocutory or collateral order"); *Poux v. FCI Bennettsville SC*, 418 F. App'x 157, 157 (4th Cir. 2011) (dismissing appeal of order staying discovery); *Stephens v. Muncy*, 918 F.2d 174 (4th Cir. 1990) (dismissing appeal of order granting leave to file motion to dismiss). Accordingly, the Court retains jurisdiction over the case.

**B. Defendants' Motion to Dismiss**

Defendants primarily argue that this case must be dismissed for lack of prudential standing because Plaintiff has brought a derivative shareholder action which he cannot now maintain pro se.[2] Generally, a shareholder lacks prudential standing to assert a direct claim for

---

[2] Defendants incorrectly cite to Rule 12(b)(1) and refer to lack of constitutional standing, while arguing dismissal for lack of prudential standing properly pursued under Rule 12(b)(6). *See* ECF No. 100-1 at 1. Unlike standing conferred by Article III of the United States Constitution, prudential standing concerns "'judicially self-imposed limits on the exercise of federal jurisdiction.' " *Doe v. Va. Dep't of State Police*, 713 F.3d 745, 753 (4th Cir. 2013) (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)), and dictates "that

4

injuries to a corporation. *Franchise Tax Bd. of Cal. v. Alcan Aluminium Ltd.*, 493 U.S. 331, 336 (1990) (noting that the "shareholder standing rule" is a matter of prudential standing "that generally prohibits shareholders from initiating actions to enforce the rights of the corporation unless the corporation's management has refused to pursue the same action for reasons other than good-faith business judgment"); *see Rivers v. Wachovia Corp.*, 665 F.3d 610, 614–15 (4th Cir. 2011); *Rawoof v. Texor Petroleum Co.*, 521 F.3d 750, 757 (7th Cir. 2008) (finding that an individual's status as the sole shareholder, officer, and director of a corporation that owned a gas station did not give him standing to assert a breach of a franchise agreement with the corporation); *cf. Gen. Technology Applications, Inc. v. Exro Ltda.*, 388 F.3d 114, 119 (4th Cir. 2004) (holding that a member of a limited liability company ("LLC") lacked standing to assert the LLC's claims). In other words, a suit to recover damages to a corporation can only be brought by the corporation itself through a derivative action, and not by individual shareholders. *Argiropoulos v. Kopp*, No. CCB-06-0769, 2007 WL 954747, at *5 (D. Md. Mar. 26, 2007).

By way of derivative action, an individual shareholder may bring "suit to enforce a corporate cause of action against officers, directors, and third parties." *Ross v. Bernhard*, 396 U.S. 531, 534 (1970). The derivative action places in the hands of the individual shareholder a means to protect the interests of the corporation from the misfeasance and malfeasance of "faithless directors and managers." *Cohen v. Beneficial Loan Corp.*, 337 U.S. 541, 548 (1949).

To determine whether a claim is derivative for standing purposes, the Court must consider who suffered the alleged harm and who would receive the benefit of any recovery or

---

the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975); *United States v. Day*, 700 F.3d 713, 721 (4th Cir. 2012) (stating that "issues of prudential standing are non-jurisdictional"). This Court, therefore, treats Defendants' motion as one brought under Rule 12(b)(6) for lack of prudential standing.

remedy. A civil action "to recover damages for an injury to a corporation can be brought only in the name of the corporation itself acting through its directors, and not by an individual stockholder though the injury may incidentally result in diminishing or destroying the value of the stock." *Jolly Roger Fund LP v. Sizeler Prop. Inv'rs, Inc.*, No. RDB 05-841, 2005 WL 2989343, at *5 (D. Md. Nov. 3, 2005) (quoting *Waller v. Waller*, 187 Md. 185, 189 (1946)). Even where "wrongful acts were done maliciously with intent to injure a particular stockholder," the action must be brought as a derivative claim. *Id.* (quoting *Danielewicz v. Arnold*, 137 Md. App. 601, 617 (2001)). *See also Rivers v. Wachovia Corp.*, 665 F.3d 610, 615 (4th Cir. 2011) ("Prohibiting individual suits to recover for injuries that result in the decline in value of a corporation's stock is understandable, for 'the gravamen of [the] complaint is an injury to the corporation and not to the individual interest of the shareholder.'"(quoting *Hite v. Thomas & Howard Co. of Florence*, 409 S.E.2d 340, 342 (1991) (alteration in original)).

By contrast "[w]here a shareholder alleges an injury that is distinct from the corporation . . . the individual shareholder has standing to redress that injury." *Argiropoulos v. Kopp*, No. CCB-06-0769, 2007 WL 954747, at *5 (D. Md. Mar. 26, 2007) (citing *Strougo v. Bassini*, 282 F.3d 162, 171 (2d Cir. 2002) (applying Maryland law)); *cf. Jolly Roger Fund LP v. Sizeler Prop. Inv'rs, Inc.*, No. RDB 05-841, 2005 WL 2989343, at *4 (D. Md. Nov. 3, 2005) ("To bring a direct suit, the stockholder's claimed direct injury must be independent of any alleged injury to the corporation."). Importantly, regardless of the "label the plaintiff gives" the suit, a court must look to the nature of the action as set forth in the complaint to determine whether it is derivative or direct. *Jolly Roger Fund*, 2005 WL 2989343, at *4 (quoting *Paskowitz v. Wohlstadter*, 151 Md. App. 1, 10 (2003)).

Here, Plaintiff has alleged that Defendants engaged in a protracted and complex RICO conspiracy that injured the corporation, and thus the shareholders. Specifically, Plaintiff claims that Defendants syphoned corporate funds to pay personal and other expenses and failed to disclose such expenditures to the shareholders. Plaintiff further alleges that Defendants mismanaged the Benson Business Center, thereby devaluing the corporate asset, and then took steps to cover up the wrongdoing. At bottom, Plaintiff's RICO claims set out classic corporate injury, and by extension, injury to all shareholders. Plaintiff's claims, therefore, are properly considered derivative for which Plaintiff lacks standing to bring as a direct action.

Further, because Plaintiff is proceeding pro se, he cannot maintain a derivative action. *See, e.g.*, *Phillips v. Tobin*, 548 F.2d 408, 411–12 (2d Cir. 1976) (preventing pro se plaintiff from bringing shareholder derivative suit); *Romman ex rel. Yuhe Int'l, Inc. v. Zhentao Gao*, No. 2:11-CV-01178-MMD, 2013 WL 1811972, at *1 (D. Nev. Apr. 29, 2013) (same); *Pinnavaia v. Moody-Stuart*, No. 09-03803 CW, 2009 WL 4899218, at *3 (N.D. Cal. Dec. 11, 2009) (same); *Weaver v. State of N.Y.*, 7 F. Supp. 2d 234, 237 (W.D.N.Y. 1998) ("It is also well established that a layperson may not appear pro se to pursue a shareholder's derivative suit.") (citations omitted); *Robinette v. Merrill Lynch*, No. 3:97-CV-0353D, 1998 WL 641815, at *1 (N.D. Tex. Sept. 16, 1998). This is because a derivative suit is "a cause of action that belongs to the corporation," *Shoregood Water Co., Inc. v. U.S. Bottling Co.*, No. RDB-08-2470, 2010 WL 723763, at *6 (D. Md. Feb. 24, 2010), and pro se individuals "may only represent themselves" in actions before this Court. Local Rule 101(a). *Accord Fowler v. Lee*, 18 F. App'x 164 (4th Cir. 2001) (pro se litigant cannot represent a class); *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975) (same).

Plaintiff argues, however, that the RICO counts are saved because he alleges separate and distinct injury visited on him. Plaintiff specifically points to a single predicate RICO act describing Defendants' improper withholding of $ 4,110 in nonresident taxes from Plaintiff's 2012 distribution payment. Plaintiff is incorrect.

To sustain a civil RICO claim, Plaintiff must allege a *pattern* of racketeering activity. The acts constituting the pattern must be both related and pose a threat of continued criminal activity. *US Arline Pilots Assoc. v. AWAPPA, Inc.*, 615 F.3d 312, 318 (4th Cir. 2010). Related activity includes predicate acts "that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 240 (1989) (quoting 18 U.S.C. § 3575(e)) (internal quotation marks omitted). To establish continuity, Plaintiff must aver either the threat of continuity or "a series of related predicates extending over a substantial period of time." *Id.* at 242. These elements of a civil RICO claim are of central importance in light of "Congress' desire to limit RICO's application to 'ongoing unlawful activities whose scope and persistence pose a special threat to social well-being.'" *US Arline Pilots Assoc.*, 615 F.3d at 318 (quoting *Al–Abood ex rel. Al–Abood v. El–Shamari*, 217 F.3d 225, 238 (4th Cir. 2000)). Accordingly, Plaintiff's sole predicate act that describes injury distinct to him is simply insufficient to constitute a pattern of racketeering activity.

What is more, Plaintiff's single claimed act of malfeasance which injured him bears no resemblance to the larger RICO scheme as pleaded. The remaining twenty-three predicate acts alleged in the Amended Complaint detail how Defendants took funds for their own personal use and otherwise devalued Annuity by (1) writing checks to companies in which Defendants had personal business interests, (2) disguising funds obtained for Defendants' own personal use as

8

corporate "losses," (3) paying Defendants' personal tax liability with Annuity's funds, (4) paying grossly excessive management fees to themselves, (5) devaluing the corporate assets to reduce shareholder distributions. By contrast, Plaintiff's claimed act of improper tax overpayment is not part of the alleged scheme's objective to "devalue" shareholder interest in Annuity. ECF No. 31 at 2. *See Bailey v. Atl. Auto. Corp.*, 992 F. Supp. 2d 560, 584 (D. Md. 2014) (dismissing RICO claim where "Plaintiff has alleged only one instance of specific fraudulent conduct directed at her."); *cf. Gillmor v. Thomas*, 490 F.3d 791, 797 (10th Cir. 2007) (finding statutory standing sufficiently pleaded where "[a]lthough many of the acts constituting an alleged pattern of racketeering activity involve non-parties, . . . [plaintiffs] also allege several predicate acts directed toward them.").[3]

Finally, although Plaintiff may allege that this single act visits harm to him, that act as pleaded is not even properly considered "racketeering activity" as defined by § 1962. Plaintiff avers that this misconduct constitutes wire fraud because emails were exchanged, but he fails to allege that Defendants acted fraudulently or for their own use and benefit by means of false and fraudulent pretenses. Withholding too much tax, without more, does not constitute racketeering,

---

[3] Since *Gillmor*, the Supreme Court has clarified "that what has been called 'statutory standing' in fact is not a standing issue, but simply a question of whether the particular plaintiff 'has a cause of action under the statute.'" *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 359 (2d Cir. 2016) (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S.Ct. 1377, 1387 (2014)). "This inquiry 'does not belong' to the family of standing inquiries, *id.*, because 'the absence of a valid . . . cause of action does not implicate subject-matter jurisdiction, i.e., the court's statutory or constitutional *power* to adjudicate the case.'" *Id.* quoting *Lexmark*, 134 S.Ct. at 1386 n.4 (emphasis in original); *see also Nw. Airlines, Inc. v. County of Kent*, 510 U.S. 355, 365 (1994) ("The question whether a federal statute creates a claim for relief is not jurisdictional."). *Accord CGM, LLC v. BellSouth Telecommunications, Inc.*, 664 F.3d 46, 52 (4th Cir. 2011) (comparing dismissal for lack of statutory standing to dismissal for failure to state a claim under Fed. Rule. Civ. Proc. 12(b)(6)). Thus, the sufficiency of Plaintiff's individual RICO claim is properly examined under Rule 12(b)(6) for failure to state a claim.

let alone an act of racketeering consistent with the RICO count as pleaded. This predicate act is simply insufficient and cannot save Plaintiff's RICO claims.[4]

### C. Remaining State Law Claims

Apart from Plaintiff's RICO claims, the Amended Complaint also alleges that Defendants committed the common law torts of fraudulent misrepresentation, conversion, unjust enrichment, breach of fiduciary duty, and fraud. The Court's original jurisdiction pursuant to 28 U.S.C. § 1331 arose from the federal RICO claims.[5] However, once the federal claims are dismissed, the court may, in its discretion, decline to exercise to its supplemental jurisdiction and dismiss the pendant state law claims as well. 28 U.S.C. § 1367(c)(3); *see Int'l Ass'n of Machinists & Aerospace Workers v. Werner–Masuda*, 390 F. Supp. 2d 479, 500 (D. Md. 2005). Given that this case is in its infancy and the remaining claims squarely sound in state common law, the Court will dismiss the remaining claims without prejudice.

---

[4] Plaintiff's RICO conspiracy count is also dismissed on identical grounds. *See Walters v. McMahen*, 684 F.3d 435, 445 (4th Cir. 2012); *cf. Robinson v. Fountainhead Title Grp. Corp.*, 252 F.R.D. 275, 283 n.9 (D. Md. 2008) (citing *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1191 (3d Cir. 1993) ("Any claim under section 1962(d) based on a conspiracy to violate any of the other subsections of section 1962 necessarily must fail if the substantive claims are themselves deficient.")).

[5] Because the Amended Complaint asserts that all parties are citizens of Maryland, this Court cannot maintain diversity jurisdiction under 28 U.S.C. § 1332, contrary to Plaintiff's jurisdictional statement. Amended Complaint, ECF No. 31 at 1-3, 5.

## III. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted. Plaintiff's RICO claims (Counts I and II) are dismissed without prejudice for lack of prudential standing. Plaintiff may refile should he retain counsel. Counts III through VII are likewise dismissed without prejudice so that Plaintiff may pursue these claims in state court.

4/27/2017
Date

/S/
Paula Xinis
United States District Judge